OPINION
J. CURTISS BROWN, Chief Justice.
This is an appeal from a judgment granting a permanent injunction to enforce the noncompetition and nondisclosure provisions of an employment contract entered into by Appellant Clayton A. Williams (Appellant or Williams) and Appellee Compressor Engineering Corporation (Appellee or Compressor). We affirm the judgment of the trial court.
Appellant, as employee, and Appellee, as employer, entered into the contract on July 6, 1982. Pursuant to its terms, Appellant was hired as manufacturing manager for Appellee, which is engaged in the manufacture and repair of compressor valves and valve parts. During his employment and for three years thereafter, Appellant was not to become involved with or employed by any business in competition with Appel-lee and was to maintain the confidentiality of any of Appellee’s trade secrets or other proprietary information as long as such remained secret or proprietary. Appellant resigned his position with Appellee after seventeen months and took a similar position with Texcentric, a corporation engaged in the same type of work as Appellee, selling to the same group of customers as Appellee, and in the same geographic markets. Appellant’s job description and responsibilities at Texcentric were substantially the same as they were with Appellee.
Appellee applied for temporary and permanent injunctions, seeking to enjoin Appellant from working for Texcentric or any of Appellee’s competitors according to their contract and to enforce the contractual provisions relating to the nondisclosure of trade secrets. At the hearing on the merits for the permanent injunction, four special issues were presented to the jury. It found Appellee did have trade secrets, such trade secrets had been disclosed to Appellant, and Appellant probably would disclose the trade secrets to competition in the future. However, it answered the fourth special issue that Appellee would not suffer irreparable injury from such disclosure. The trial court overruled Appellant’s Motion for Judgment and granted Appellee’s Motion to Disregard Finding on Special Issue No. 4. It entered judgment for Appel-lee granting the injunctive relief it sought.
Appellant presents seven points of error on appeal. In the first six, he claims trial court error in its finding of irreparable injury as a matter of law pertinent to Special Issue No. 4. In the seventh, he claims the trial court modified the scope of the original covenant not to compete and therefore erred as a matter of law in granting attorney’s fees to Appellee. Appellee also presents two cross points which we do not need to consider in affirming the judgment.
Appellee objected at trial to the submission of Special Issue No. 4 on the ground that the jury’s affirmative answers to Special Issues Nos. 1, 2, and 3 established the existence of threatened irreparable injury as a matter of law; therefore, submission of the fourth issue, which was predicated on the preceding affirmative answers, would constitute a duplicate submission of the issue likely to create a conflict in the jury’s answers. It objected further on the ground that disclosure of trade secrets constitutes irreparable injury as a matter of law. We agree with the trial court’s disregarding of the answer to the issue and its ruling that where the uncontradicted evidence shows that a former employee is working for a direct competitor, no finding of irreparable injury is necessary to support a permanent injunction to protect trade secrets. The jury’s affirmative answers to Special Issues Nos. 1-3 estab *471 lished irreparable injury as a matter of law. Appellant does not challenge the findings on Special Issues Nos. 1-3 on appeal.
In reviewing the ruling of a trial court on a permanent injunction, the appellate court as a court in equity must review the contract in question together with all the evidence to determine whether the ruling was correct. The trial court’s construction of a restrictive covenant and remedies for its breach are matters of law for our decision. Electronic Data Systems v. Powell, 524 S.W.2d 393, 395-96 (Tex.Civ.App.—Dallas 1975, writ ref’d n.r.e.). All that is required by statute is that an applicant show himself entitled to injunctive relief under the principles of equity and the provisions of state statutes. TEX.REV.CIV.STAT.ANN. art. 4642(3) (Vernon 1940).
The record reveals that Appellant had thirty years experience in various machine and engineering industries but no prior experience in the compressor valve industry. He was responsible for Appellee’s manufacturing activities and testified that he has a photographic memory and is able to observe the way something is made and then copy it.
Appellee’s president testified it was impossible to identify or quantify the injury that had been or would be caused by Appellant’s disclosure of Appellee’s trade secrets and other confidential information. Further, the market for replacement of its product, poppet valves, was a one-time sale market with no opportunity for repeat sales. Thus, prevention of the disclosure of their methods and processes was extremely important in attracting one-time sales. Appellee included the nondisclosure and noncompetition clauses in its employment contracts so that its techniques could not be duplicated by a competitor quickly and without the developmental costs incurred by Appellee in its twenty years of business. The president testified three years was the average length of time required to develop the methods they considered secret. He admitted he did not know if Appellee had lost sales or customers because of Appellant’s departure and had no specific information regarding any injury suffered by Appellee due to Appellant’s employment at Texcentric.
In its conclusions of law, the trial court found that profits lost by Appellee because of Appellant’s disclosure of trade secrets were not susceptible of accurate ascertainment, Appellant’s use or disclosure of such trade secrets would constitute irreparable injury to Appellee because their secrecy could never be restored, and Special Issue No. 4 referring to irreparable injury was an immaterial issue that should not have been submitted because the question was established as a matter of law by the undisputed evidence and the jury’s findings on Special Issues Nos. 1-3. Additionally, it found enforcement of the noncompetition agreement was not a greater restraint on Appellant than was reasonably necessary for Ap-pellee’s protection and would not impose undue hardship on Appellant.
Both Appellant and Appellee acknowledge there is no Texas ease which specifically requires proof that the disclosure of trade secrets by a former employee to his new employer will irreparably harm the former employer as a prerequisite to a permanent injunction. In two federal cases, threatened disclosure or use of trade secrets has been held to constitute irreparable injury as a matter of law. FMC Corp. v. Varco Int'l, Inc., 677 F.2d 500, 503 (5th Cir.1982). In granting a temporary injunction, the Vareo court stated that the number of trade secrets divulged did not determine the threat of such harm. Rather, it is sufficient that a single secret may be disclosed. Accord Union Carbide Corp. v. UGI Corp., 731 F.2d 1186, 1191-92 (5th Cir.1984).
Texas courts clearly recognize the right of an employer to insist that the nondisclosure provisions of his contract with an employee be specifically enforced. A trade secret case is premised on a breach of contract or wrongful disregard of confidential relationships. K & G Oil Tool & Service Co. v. G & G Fishing Tool Service, 158 Tex. 594, 314 S.W.2d 782, 787 (1958), cert. denied, 358 U.S. 898, 79 S.Ct. 223, 3 *472 L.Ed.2d 149 (1958). The law permits greater restrictions to be imposed on the employee in this regard than in other provisions of employment contracts. A noncompetition covenant which continues following termination of the employment is enforceable if the restraint is not unduly onerous and is necessary to protect the employer’s business or good will. Even when he operates in the best of good faith, the former employee working in a similar capacity can hardly prevent his knowledge of his former employer’s confidential methods from showing up in his work. Weed Eater, Inc. v. Dowling, 562 S.W.2d 898, 901-02 (Tex.Civ.App.—Houston [1st Dist.] 1978, writ ref’d n.r.e.); Electronic Data Systems, 524 S.W.2d at 397-98. Proof that trade secrets will be used by the employee in competition against his former employer afford support for an injunction specifically enforcing the noncompetition covenant. This is usually the only way use of the secret by the former employee can be prevented. Grace v. Orkin Exterminating Co., 255 S.W.2d 279, 285 (Tex.Civ.App.—Beaumont 1953, writ ref’d n.r.e.).
Appellant argues that irreparable harm is a necessary element of this cause of action. He depends on Parkem Industrial Services v. Garton, 619 S.W.2d 428 (Tex.Civ.App.-Amarillo 1981, no writ), wherein the trial court refused to enforce a noncom-petition provision by permanent injunction in light of the Appellant’s failure to establish as a matter of law that it would suffer irreparable harm for which there was no adequate remedy at law. The standard of review set by the Parkem court was that an irreparable injury is one that cannot be compensated or for which compensation cannot be measured by any certain pecuniary standard. Additionally, that injury must be actual and substantial, or there must exist an affirmative prospect of it and not a mere possibility of harm. Id. at 430. Appellant points to the testimony of Appel-lee’s president and another of its employees that they were unable to allege specific examples of harm Appellee had or would suffer and that one alleged example, the loss of specific sales to Texcentric, might have been due to Appellee’s cancellation of Texcentric’s sales' discount as opposed to any disclosure by Appellant. However, the Parkem court emphasized that ease did not involve trade secrets. It is apparent the court believed that fact was clearly a distinguishing factor.
When the term “irreparable injury” is used with “no adequate remedy at law” the former term is a misnomer, because if an injury is irreparable, there is no remedy for it, adequate or inadequate. 6 Lowe, Texas Practice Remedies § 114 (2nd ed. 1973). The fact that the injury or damage is incapable of ascertainment is more reason for the court in equity to intervene. Id. “Irreparable injury” is best defined as occurring when the injured party cannot be adequately compensated in damages or the damage resulting from it cannot be measured by any pecuniary standard. Id.; Armintor v. Community Hospital of Brazosport, 659 S.W.2d 86, 89 (Tex.App.-Houston [14th Dist.] 1983, no writ); Inman v. Padrezas, 540 S.W.2d 789, 797 (Tex.Civ.App.-Corpus Christi 1976, no writ). The Inman court, cited by Appellant, held that one seeking injunctive relief must plead irreparable injury and/or no adequate remedy at law and/or that irreparable injury is threatened. Id.
Two other cases cited by Appellant as support for his argument are distinguishable from the current situation. The court in May v. Lee, 28 S.W.2d 202, 205 (Tex.Civ.App.-Galveston 1930, no writ) distinguished that case from those involving trade secrets cases in which such restraints as noncompetition covenants may reasonably be enforced by injunction. It found that the Appellant before it was not entitled to a permanent injunction because there was nothing to show he would suffer irreparable injury. Also, Appellant had a legal remedy by suit for damages fixed in the contract. A distinction based on the nonexistence of trade secrets was made in Byers v. Trans-Pecos Abstract Co., 18 S.W.2d 1096 (Tex.Civ.App.-El Paso 1929, writ dism’d). The court denied Appellee’s request for a temporary injunction and *473 found that the methods Appellee used in its business were those ordinarily used by abstract companies, and the nature of the business was not such that Appellant's disclosures would harm it.
A trial court may disregard a special issue jury finding that is without support in the evidence or is not material. C & R Transport, Inc. v. Campbell, 406 S.W.2d 191, 194 (Tex.1966); Olin Corp. v. Cargo Carriers, 673 S.W.2d 211, 214 (Tex.App.—Houston [14th Dist.] 1984, no writ); Tex.R.Civ.P. 301. It is immaterial when the issue should not have been submitted or it was properly submitted but has been rendered immaterial by other findings. Id.; Blue Bell, Inc. v. Isbell, 545 S.W.2d 563, 566 (Tex.Civ.App.—El Paso 1976, no writ); 4 McDonald Texas Civil Practice in District and County Courts § 17.31 (rev. 1984). However, “if a finding upon an issue claimed to be immaterial could if made, or does as made, create a fatal conflict with other findings or otherwise affect the legal significance of the verdict and hence the judgment to be entered, the issue is material and must not be ignored.” Campbell, 406 S.W.2d at 194, quoting 4 McDonald, Texas Civil Practice § 17.31 (rev. 1971); Hudgens v. Goen, 673 S.W.2d 420, 424-25 (Tex.App.-Fort Worth 1984, no writ). In the latter case, the court found that proof of irreparable harm is a necessary element of a cause of action for injunctive relief when one party has used the same or a similar trade name and the parties are not in competition.
A court may not strike jury answers on the basis of a fatal conflict among them if there is any reasonable basis upon which they can be reconciled. Bender v. Southern Pacific Transportation Co., 600 S.W.2d 257, 260 (Tex.1980); Little Rock Furniture Mfg. Co. v. Dunn, 148 Tex. 197, 222 S.W.2d 985, 989 (1949); Marshbank v. Austin Bridge Co., 669 S.W.2d 129, 134 (Tex.App.—Corpus Christi 1984, writ ref’d n.r.e.). For a verdict to be set aside, the conflicting answers must be such that one answer would establish a cause of action or defense, while the other would destroy it. Little Rock Furniture Mfg., 222 S.W.2d at 991; Nichols v. William A. Taylor, Inc., 662 S.W.2d 396, 401 (Tex.App.-Corpus Christi 1983, no writ); Ascension Chemical of Texas v. Wilson, 650 S.W.2d 104, 106 (Tex.App.-Houston [14th Dist.] 1983, writ ref'd n.r.e.). The court must disregard the alleged conflicting answer but take into consideration the rest of the verdict, and if it finds one of the answers would require judgment for the plaintiff and the other would require judgment for the defendant, the answers are fatally in conflict. Little Rock Mfg., 222 S.W.2d at 991; Nichols, 662 S.W.2d at 401.
Applying this test to the jury’s answers in this case, we find no fatal conflict. The answer to Special Issue No. 4 by itself does not entitle Appellant to judgment; the answers to Special Issue Nos. 1-3 with which No. 4 is allegedly in conflict, entitle Appellee to judgment. In effect, the answers to Nos. 1-3 rendered immaterial an answer to No. 4. See Marshbank, 669 S.W.2d at 135. Irreparable harm is not a material or controlling element of Appellee’s cause of action. The final judgment before us states that the plaintiff’s Motion to disregard Special Issue No. 4 is granted, based on the ground that the issue should never have been submitted because the proposition inquired about was established as a matter of law by the undisputed evidence. No fatal conflict which impacted upon the verdict was created, as the answer to Special Issue No. 4 was unnecessary for Appellee to be entitled to injunctive relief.
Appellant also argues that Special Issue No. 4 could not have been immaterial because it was tried by implied consent. Camco, Inc. v. Evans, 377 S.W.2d 703 (Tex.Civ.App.-San Antonio 1963, writ ref’d n.r.e.). This is true, Appellant argues, because Appellee did not object on grounds of relevancy, or materiality or any other grounds to its questioning of Appel-lee’s president concerning harm it suffered because of Appellant’s breach. Further, Appellee presented testimony on direct examination concerning loss of sales and oth *474 er harm to Appellee from the breach. It is true that an issue not raised by pleadings and not tried by express or implied consent may be disregarded as immaterial. Id. at 707; 4 McDonald, Texas Civil Practice § 17.31. We overrule points one through six.
In the seventh point, Appellant alleges the trial court erred as a matter of law in granting attorney’s fees to Appellee where the court modified the scope of the original agreement. The employment contract stipulated that the employee agreed not to compete with Appellee “in the State of Texas and in any other geographic area in which employee has worked during the terms of his employment.” In its conclusions of law the trial court limited the scope of the geographical area described in the employment contract to the State of Texas and stated that prohibition of competition in the state is “reasonably necessary to protect the business, trade secrets and good will of plaintiff.” It is apparent Appellant’s argument is based on the failure of the trial court to extend the injunction “to any other geographic area” as stated in the contract; thus, he claims a modification of the contract’s term. Testimony reveals Appellant made only two trips outside Texas in connection with his job. These were to Chicago & California to call on vendors from whom Appellee considered buying equipment for its Houston operation. Ap-pellee’s president testified that Appellant worked primarily in Texas during his employment.
Appellant cites Weatherford Oil Tool Co. v. Campbell, 161 Tex. 310, 340 S.W.2d 950, 952-53 (1960) that in an action for damages on the noncompetition clause of a contract, if the agreement is not enforceable according to its terms because either the time or the area stipulated in it is unreasonable, the employer may obtain in-junctive relief. He will not, however, receive a money recovery for anything the employee may have done prior to a judicial declaration of the rights and obligations arising from the contract. Appellant argues that this ruling also prohibits recovery for attorney’s fees in that situation. Appellant has failed to distinguish between Weatherford and this case. The issue here is not, as it was in Weatherford, whether the contract was reasonable in its limitations. Appellant has not claimed the contract was unreasonable. Further, attorney’s fees are in the nature of costs, not damages. 20 Am.Jur.2d Costs § 72 (1965). A party may recover reasonable attorney’s fees when he successfully prosecutes a claim founded on, among other things, written contracts. TEX.CIVIL PRACTICE & REMEDIES CODE ANN. § 38.001 (Vernon 1985);[1] Gerdes v. Mustang Exploration, 666 S.W.2d 640, 645 (Tex.App.—Corpus Christi 1984, no writ).
Before trial Appellee and Appellant stipulated to a “reasonable” amount of attorney’s fees as $20,000. They also agreed to submit to the court the question of whether Appellee was entitled to recover such fee. Appellee alleged it was entitled to recover its attorney’s fees in its First Amended Original Petition. The trial court’s award was based on the stipulation of the parties; therefore, no error was committed. We overrule the seventh point of error.
The judgment of the trial court is affirmed.

. Formerly this was TEX.REV.CIV.STAT.ANN. art. 2226.